IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF THE STATE OF TENNESSEE

| | | |
|---|---|---|
| ZENA BYRNE | ) | |
| (f/k/a ZENA HOWARD), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No._____ |
| | ) | |
| HORSEPOWDER, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Zena Byrne f/k/a Zena Howard, for her cause of action against Defendant, Horsepowder, Inc., would show:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Zena Byrne, *f/k/a* Zena Howard, is a citizen and resident of the State of Tennessee currently residing at 1360 John Oliver Road, McMinnville, TN 37110.

2. Defendant, Horsepowder, Inc. is a Delaware Corporation with the principal address of 44200 Waxpool Road, Ste 162, Ashburn, VA 20147-5897.  Defendant may be served through its registered agent for service of process Vincent Polentes, 44200 Waxpool Road, Ste 162, Ashburn, VA 20147-5897.

3. Jurisdiction is proper pursuant to *28 U.S.C. §1332* as this dispute is between citizens of different states, and the amount in controversy exceeds $75,000.00.  Venue is proper pursuant to *28 U.S.C. §1391* as a substantial part of the acts or omissions giving rise to this claim for breach of contract occurred within Warren County, TN, in the Eastern District of Tennessee.

1

## FACTUAL ALLEGATIONS

4.   Horsepowder, Inc. manufactures, distributes, and sells a proprietary blend of powder and paste to be used on horses, dogs, cats, other animals (and even humans) to treat rain rot and other common skin and coat ailments under the brand name Coat Defense.

5.   Originally, the basic ingredients for Coat Defense were developed and marketed by the Polentes' as an organic skin care line under the name Bause.

6.   Plaintiff has extensive horse and animal experience, is knowledgeable in training and raising animals, and is well known within the equestrian community.  Plaintiff discovered that the Bause deodorant powder worked well on her horse to cure rain rot.  Plaintiff contacted the Polentes numerous times regarding her discovery.  Together, and with further research and collaborative efforts, they decided to begin manufacturing, marketing, and selling the product for animals under the name Coat Defense through a newly formed corporation, Horsepowder, Inc.

7.   Horsepowder, Inc. was formed as a Delaware corporation on April 7, 2016, with an initial issuance of 2000 shares. Vincent Polentes and his wife, Sandra Polentes are the majority shareholders, directors, and officers of Horsepowder, Inc. Vincent Polentes is the CEO and Treasurer, and Sandra Polentes is the President of the company.

8.   In lieu of a partnership, Defendant offered Plaintiff royalties for her discovery and development of these products and other future potential products.   On May 25, 2016, Horsepowder, Inc. entered into a Product and Marketing Agreement with Plaintiff, Zena Howard. The 5/25/2016 Agreement is attached hereto as Exhibit 1.  Pursuant to the Agreement Defendant agreed to pay Plaintiff a $1.00 royalty payment for the each of the first 500,000 units of Coat Defense sold by the company, and $.50 per unit for each subsequent unit sold.  Also pursuant to

2

the Agreement, Defendant issued Plaintiff a Stock Certificate for 10% of the 2000 authorized shares. Finally, the Agreement provided it could be modified by mutual consent of the parties.

9.   On January 5, 2018, Defendant and Plaintiff entered into a second modified royalty agreement (2nd Agreement). A copy of the 2nd Agreement is attached hereto as Exhibit 2. The 2nd Agreement, drafted by Defendant, provides that Defendant agreed to pay Plaintiff under the following compensation structure:

**Royalty first 500,000 Units**

The company agrees to pay a product royalty of $1.00 to Zena Howard for each unit of Pro Size COAT DEFENSE® daily PREVENTATIVE POWDER as well as each unit of Pro Size COAT DEFENSE® TROUBLE SPOT DRYING PASTE sold by the company. In addition, for each Regular size COAT DEFENSE® daily PREVENTATIVE POWDER and TROUBLE SPOT PASTE sold by the company, a royalty of $.50 will be paid. This royalty is in addition to any sales or distribution cost differences Zena may earn through company standard pricing and or commission policies due to her position in the supply chain as a retailer, distributor or affiliate on certain business channels and applies to the first Five Hundred Thousand units sold by the company.

After the initial 500,000 units, additional Royalties will be paid at a rate of 50% ($.50 for pro sized products, and $.25 for regular sized products as identified above) per unit for each unit sold from the 500,001 unit for the life of this agreement.

**Payment of Royalties:**

Company will issue a monthly check covering royalties for all sales in the prior month by the 15th of the month following the sale. Jan - June 2018 royalty check will be paid on or before 7/15/18

**Non-Disclosure and Non-Circumvention**

Above payments are contingent on mutual acceptance of the company's standard Non-Disclosure and Non-Circumvention Agreement.

**Agreement:**

This agreement is intended to be the complete understanding between Zena Howard and HorsePowder, Inc . as of the date above. As the company grows and new products are added, the agreement will be modified or replaced with mutual consent.

10.   Until early 2022 Defendant performed under the 2nd Agreement, sending Plaintiff monthly checks and a spreadsheet documenting how the royalty payments were calculated.

However, on April 19, 2022, Plaintiff received a phone call from Mr. Polentes in which he informed her that he had mismanaged company funds and that, as a result, she would not be receiving her monthly royalty payments for at least 6 months to help rectify the situation. On September 16, 2022, Defendant resumed making partial royalty payments to Plaintiff of $3000 per month. Defendant unilaterally altered the terms and simply paid Plaintiff $3000 per month, and then stopped payments altogether in October 2023. The 2nd Agreement was never modified or replaced by mutual consent. Plaintiff did not consent to any replacement or modification of the 2nd Agreement.

11. On October 6, 2023, Plaintiff had a telephone conversation with Defendant's CEO, Vincent Polentes, wherein he acknowledged approximately $40,000 in royalty payments that were currently due Plaintiff under the 2nd Agreement, and requested Plaintiff agree to a buy-out of the 2nd Agreement. Mr. Polentes followed that conversation with an October 13, 2023, email wherein he confirmed Defendant's intent to breach the 2nd Agreement and no longer honor its terms.

12. Plaintiff remained involved in the company throughout her contractual relationship with Defendant from her house in McMinnville, TN. She was actively involved in marketing Coat Defense through her personal contacts, and on-line efforts, until Defendant unilaterally removed her from that role and hired a third-party marketing firm in early 2022. While she then stepped back from that aspect of the business, she continued to answer customer's and Defendant's questions daily, and sell Coat Defense through on-line platforms as well as in her store located in McMinnville, TN.

## COUNT I – BREACH OF CONTRACT

13. Paragraphs 1 through 12 are incorporated herein by reference as though fully set forth.

4

14. Defendant and Plaintiff entered into a contract, the 2nd Agreement, whereby Defendant was to make monthly royalty payments to Plaintiff based upon the number of Coat Defense units sold. Defendant has breached that agreement by failing to make the required royalty payments and announcing its intent to no longer honor its terms.

15. Defendant is entitled to recover all royalty payments due at the time of trial, and further seeks the remedy of specific performance of all future royalty payments which subsequently become due. Alternatively, Plaintiff seeks an award of the present value of the royalty payments which are to be paid to her over the course of her remaining lifetime.

**PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiff seeks judgment against Defendant and an award of her damages for breach of contract in an amount to be determined at trial, but which exceeds $75,000 and/or an order requiring specific performance of the 2nd Agreement. Plaintiff further seeks any other relief the Court deems equitable and appropriate.

Respectfully submitted,

*/s/Mathew R. Zenner*
Mathew R. Zenner (TN BPR 018969)
ZENNER LAW, PLLC
320 Seven Springs Way, Suite 250
Brentwood, TN 37027
(615)425-3476
mrzennerlaw@gmail.com

6